UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JAMES KENNEDY,

      Plaintiff,

  -v-                                                 No.  1:18-cv-01907-LTS-KNF

COVIDIEN, LP,

      Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

      Plaintiff James Kennedy ("Kennedy" or "Plaintiff") brings this action against Defendant Covidien LP[1] ("Covidien" or "Defendant") asserting state law claims for common law strict products liability, failure to warn, negligence, breach of warranty, punitive damages, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and for consumer fraud under New York General Business Law Sections 349 and 350. Plaintiff claims injuries arising from the implantation of Defendant's synthetic mesh product in his body in connection with a surgical hernia repair. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

      Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint. In his opposition papers, Plaintiff requests leave to amend the Complaint to remedy certain material typographical errors. The Court has reviewed thoroughly all of the parties' submissions and, for the following reasons, Defendant's motion to dismiss all Counts of

---

[1]   Defendant was incorrectly named in Plaintiff's Complaint as Covidien, L.P. (Docket Entry No. 9, Def. Mot. to Dismiss 1). The Clerk of the Court is directed to correct the docket to reflect the above caption.

the Complaint is granted and Plaintiff's request for leave to amend is denied as futile, although Plaintiff will be permitted to make a further motion for leave to amend the Complaint.

BACKGROUND

The following facts are drawn from the allegations set forth in the Complaint and are taken as true for the purposes of this motion to dismiss. On October 3, 2016, Plaintiff underwent an open ventral hernia repair procedure to introduce Defendant's Parietex Optimized Composite Mesh ("PCOx Mesh")[2] to Plaintiff's peritoneal cavity. (Compl. ¶ 46.) Plaintiff's surgical and operative reports state that a 15 centimeter by 10 centimeter unit of PCOx Mesh was implanted. (Id. at ¶ 47.) Plaintiff alleges that following the procedure he has experienced stomach pain and recurring hernias. (Id. at ¶ 48.) The PCOx Mesh is still implanted in Plaintiff's body. (Id. at ¶ 47.) Plaintiff further alleges that, because of the PCOx Mesh, he will be at a greater risk of malfunction, decreased efficacy, perforation of tissue and organs, adherence to tissue and organs, infection, nerve damage, and the need for subsequent procedures. (Id. at ¶ 49.)

A hernia is a medical condition caused by the penetration of fatty tissue, intestine, or organ through the muscle of connective tissue. (Id. at ¶ 15.) A hernia may be treated by the introduction of a synthetic or biological surgical mesh. (Id. at ¶ 20.) Defendant's product is a synthetic mesh with a two-sided absorbable collagen barrier in the visceral side that is designed

---

[2]  In his request for leave to amend the Complaint, Plaintiff proposes to change the Complaint's reference to the "PerFix Plug" and "3DMax," which are products not manufactured by Defendant, to refer to Defendant's PCOx Mesh. (Compl. ¶¶ 55-57.) Plaintiff does not seek to alter the allegations regarding the design and characteristics of the mesh product. Defendant argues that the motion for leave to amend should be denied because the amendment would be futile at this juncture in light of the pleading defects discussed in the remainder of the Memorandum Order. The Court's analysis of the dismissal motion takes into account Plaintiff's proposed amendments to the Complaint.

to minimize attachments of the mesh to surrounding organs and tissues. (Id. at ¶ 32.) The parietal side of the PCOx Mesh is a hydrophilic, three-dimensional, polyester textile that supposedly encourages wall integration and strength. (Id.)

Plaintiff claims that Defendant's PCOx Mesh was defectively designed and manufactured and that Defendant did not provide adequate warnings. (Id. at ¶¶ 51-69.) Plaintiff also alleges that Defendant fraudulently misrepresented that "their hernia mesh products had been adequately tested in clinical trials and were found to be safe and effective." (Compl. ¶ 97.) Plaintiff relied upon and referred to in his complaint advertising materials produced by Defendant for its PCOx Mesh.[3] The advertising material that Plaintiff has incorporated by reference includes a brochure on Ventral Hernia Repair, a Parietex Mesh Clinical Studies Compendium,[4] and a Mesh Value Analysis Brief.[5] (Compl. ¶¶ 35, 93.) The Ventral Hernia Repair document describes changes made in PCOx Mesh to increase strength and reduce adherence. The Clinical Study compares Parietex Mesh with other methods of hernia repair and includes the associated risk rates for recurrence, adherence, pain, and migration. The Clinical Study explicitly indicates that open ventral repairs have a "high rate of recurrence."

---

[3] See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (holding that at the motion to dismiss stage the court may consider documents attached to or incorporated in the complaint).

[4] Ventral Hernia Repair, Covidien, www.medtronic.com/content/dam/covidien/library/us/en/product/hernia-repair/parietex-mesh-clinical-studies-compendium.pdf (last visited Feb. 22, 2019) ("Ventral Hernia Repair"); Parietex Mesh Clinical Studies Compendium, Covidien www.medtronic.com/content/dam/covidien/library/us/en/product/hernia-repair/parietex-optimized-composite-and-pcox-mesh-absorbatack-fixation-device-brochure.pdf (last visited Feb. 22, 2019) ("Clinical Study").

[5] The link incorporated for the "Mesh Value Analysis Brief" was not accessible. (Compl. ¶ 93(a)).

DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Strict Products Liability Claim

In Count I of the Complaint, Plaintiff alleges that Defendant's PCOx Mesh[6] was defectively designed and manufactured.[7] In New York, strict products liability can be asserted on the bases of a design defect, a manufacturing defect, or a failure to provide adequate warnings pertaining to the use of a product. See Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 106-07 (1983).

---

[6] See supra, note 2. The Court construes the Complaint's references to the PerFix Plug and 3D Max products as references to Defendant's PCOx Mesh and accepts as true Plaintiff's well pleaded factual allegations concerning the mesh.

[7] Ordinarily, design defect and manufacturing defect are pleaded separately as alternative arguments. E.g., Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 555 (S.D.N.Y. 2016) (stating that a plaintiff may plead design defect and manufacturing defect in the alternative). In the present case, Plaintiff pleads design defect and manufacturing defect in the same Count. However, because each claim is governed by different standards, each will be examined separately.

Design Defect

The design defect inquiry generally considers whether the "defectively designed product is one which, at the time it left the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." Id. at 107 (citing Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 479 (1980)). To adequately plead strict products liability under a design defect theory, a plaintiff must allege that: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." Cowan v. Costco Wholesale Corp., No. 15-CV-05552-PKC, 2017 WL 59080, at *2 (E.D.N.Y. Jan. 5, 2017) (citing Simon v. Smith & Nephew, Inc., 990 F. Supp. 2d 395, 403 (S.D.N.Y. 2013)).

Plaintiff claims that the small woven design of the mesh poses a substantial likelihood of harm because, once it is implanted, nerves grow through the pores and attach to the mesh. (Compl. ¶ 55.) The nerves are then pulled and stretched with the mesh, allegedly causing untreatable pain. (Id.) Plaintiff also asserts that the use of polypropylene for mesh is "problematic" and causes "so many complications."[8] (Id.) These allegations, taken as true, could plausibly suggest a specific flaw in the PCOx Mesh, namely, its small woven design.

Nonetheless, Plaintiff must also allege a feasible alternative design to state a claim under a design defect theory. Although a plaintiff need not possess specialized scientific

---

[8] Defendant asserts in its motion to dismiss that its PCOx Mesh is manufactured with polyester rather than with polypropylene. (Def. Mot. to Dismiss, 7.) However, for the purposes of this motion practice, the Court accepts Plaintiff's allegations as true. See supra, notes 2 and 5.

or technical knowledge at the pleading stage, courts have routinely dismissed strict products liability claims premised on a design defect where the plaintiff has failed to plead that it was feasible to design the product in a safer manner ("a feasible alternative design").  See DiBartolo v. Abbott Labs., 914 F. Supp. 2d 601, 622-23 (S.D.N.Y. 2012) (rejecting plaintiff's argument that a design defect claim does not require a pleading of feasible alternative design).

Plaintiff cites Ohuche v. Merck & Co., No. 11-civ-2385-SAS, 2011 WL 2682133, at *2 (S.D.N.Y. July 7, 2011), for the proposition that pleading a feasible alternative design is not necessary at the motion to dismiss stage.  (Pl. Mem. in Opp'n. 4.)  Although the Ohuche court distinguished Colon v. BIC USA, Inc., 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001), a case requiring that a feasible alternative design be established at the motion for summary judgment stage, reasoning that it was unfair to require plaintiff to plead an alternate design that required specialized scientific knowledge, Ohuche is itself distinguishable in that the pro se plaintiff in that case would have been required to attain scientific knowledge that was uniquely in the possession of the defendant and a few other large pharmaceutical companies.[9]  The particular circumstances in Ohuche cannot be read to undermine the general requirement that an alternative design must be pleaded, even if it is not fully developed at the pleading stage.

The beginning of Plaintiff's Complaint does suggest in a conclusory manner that alternative procedures are "safer and more effective alternatives to hernia mesh" including "the Shouldice Repair, McVay Repair, Bassini Repair, and Desarda Repair."[10]  (Compl. ¶28.)

---

[9]   Ohuche concurrently analyzes a failure to warn claim for strict products liability which requires no showing of a feasible alternative design as a requisite element.  2011 WL 2682133, at *2.

[10]  The Complaint gives no details regarding these procedures, their risks, or whether they use a mesh that varies in design from Defendant's PCOx Mesh.  Indeed, the Complaint suggests that the procedures do not use hernia mesh at all.

However, alleging that the product should not be used at all is insufficient to satisfy the feasible alternative design element. See S.F. v. Archer Daniels Midland Co., 594 Fed. App'x 11, 12-13 (2d Cir. 2014); see also Hilare v. DeWalt Indus. Tool Co., 54 F. Supp. 3d 223, 248 (E.D.N.Y. 2014) (finding that plaintiff "cannot satisfy his burden to propose a feasible alternative design by proposing that an entirely different product could have been used."). Here, Plaintiff's conclusory allegation alluding to a safer alternative is not pleaded in sufficient detail to support a reasonable inference that there are indeed feasible alternative products.

Manufacturing Defect

To state a claim for strict products liability under the theory of a manufacturing defect, the plaintiff must plead "(1) that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction, and (2) that the defect was the cause of plaintiff's injury." Colon, 199 F. Supp. 2d at 85 (quoting Caprara v. Chrysler Corp., 52 N.Y.2d 114, 129 (1981)). Where the plaintiff does not allege a specific flaw in the defective unit, New York law allows the use of circumstantial evidence to establish a manufacturing defect when plaintiff can show that the product did not perform as intended and excludes all other causes for the product failure that are not attributable to the defendant.[11] See Goldin v. Smith & Nephew, Inc., No. 12-civ-9217-JPO, 2013 WL 1759575 *3 (S.D.N.Y. April 24, 2013) (citing Speller ex. Rel. Miller v. Sears, Roebuck & Co., 790 N.Y.2d 38, 41-42 (2003)).

Here, Plaintiff does not allege that a particular mishap occurred in the manufacturing process that rendered the specific implanted unit of PCOx Mesh defective;

---

[11]  E.g., Parillo v. Stryker Corp., No. 15-cv-155 (BKS/RFT), 2015 WL 12748006, at *4 (N.D.N.Y. Sept. 29, 2015) (finding complaint sufficient that proffered circumstantial evidence and post-operative diagnosis of hardware failure).

Plaintiff is instead arguing that the entire design of Defendant's PCOx Mesh is defective due to its small woven structure. (Compl. ¶ 55.) Nor does Plaintiff proffer circumstantial evidence showing that the product did not perform as intended and excluding any alternate causes of his injuries. Indeed, the study cited in the Complaint contains warnings of the conditions Plaintiff complains of, thus leading to the inference that the product was manufactured and performed as intended.

Consequently, Plaintiff has failed to plead a manufacturing defect and Count I must be dismissed in its entirety.

Failure to Warn

In Count II of the Complaint, Plaintiff also invokes the third theory for strict products liability, failure to warn. Plaintiff asserts that the warnings provided with the PCOx Mesh "were inadequate and insufficient to alert physicians or consumers to the dangerous risks associated with the product." (Compl. ¶ 62.) Plaintiff further contends that the provided warnings were ambiguous, inaccurate, and unclear. (Id. at ¶ 68.) Plaintiff alleges that the "dangerous risks" include "extreme pain, risk of malfunction, decreased efficacy, recurrent hernia, perforation of tissue and/or organs, adherence to tissue/organs, infection, nerve damage, subsequent surgeries and other complications." (Id.)

To establish a claim for strict products liability under a theory of failure to warn, a plaintiff must prove that "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm."[12] Goldin, 2013 WL 1759575, at *5 (citing State Farm

---

[12] New York law follows the doctrine of the informed intermediary; a manufacturer has a duty to warn physicians of all the risks associated with a product. The doctrine is applicable to medical devices and relieves the manufacturer of liability when it provides

Fire & Cas. Co. v. Nutone, Inc., 426 Fed. App'x 8, 10 (2d Cir. 2011)). At the motion to dismiss stage, a plaintiff must plead facts pertaining to how the warning was inadequate or insufficient. See Reed, 839 F. Supp. 2d at 575.

Plaintiff's claim for failure to warn cannot survive the present dismissal motion because it does not identify how the warnings were inadequate or insufficient. Plaintiff alleges conclusorily that the warnings do not reflect the true nature or the severity of the injuries associated with PCOx Mesh. The referenced documents do, however, identify associated risks of PCOx Mesh. Plaintiff has failed to provide factual support for his conclusory assertion that Defendant's warnings did not adequately caution physicians and patients concerning the risks associated with PCOx Mesh. Id. at 576 ("Assertions that warnings were not 'adequate' or 'sufficient' are nothing more than legal conclusions unsupported by factual content.").

Accordingly, Count II will be dismissed.

Negligence

Plaintiff asserts a negligence claim in Count III of the Complaint. He alleges that "Defendant was negligent in designing, manufacturing, and selling hernia mesh products by, among other things, failing to properly fabricate the hernia mesh products, failing to adequately test the hernia mesh products, and failing to conduct adequate quality control procedures for the hernia mesh products." (Compl. ¶ 72.)

The New York Court of Appeals has held that claims for negligent design and design-based strict products liability should be analyzed under the same standard in products liability cases. See Denny v. Ford Motor Co., 87 N.Y.2d 248, 258 (1995) See also Adams v.

---

the physician with sufficient information concerning the risks associated with the device. See Tomaselli v. Zimmer Inc., No. 14-cv-04474-RA-SN, 2017 U.S. Dist. LEXIS 9874, *11 (S.D.N.Y. Jan. 20, 2017).

Genie Indust., Inc., 14 N.Y.3d 535, 542-43 (2010) (confirming that the standard set forth in Voss is applicable to both strict products liability and negligence). Since Plaintiff's strict products liability claim for design defect, manufacturing defect, and failure to warn have all been dismissed, his allegations in Count III that Defendant negligently designed, manufactured, and sold the PCOx Mesh must also be dismissed.

Further, Plaintiff's allegations regarding Defendant's negligence in testing and ensuring quality control procedures for the PCOx Mesh are conclusory and unsupported by factual allegations sufficient to infer a breach of duty.

Therefore, Count III will be dismissed in its entirety.

Breach of Warranty

Count IV of Plaintiff's Complaint asserts a breach of warranty claim, alleging that "Defendant impliedly warranted to Plaintiff and all others similarly situated that their hernia mesh products were reasonably fit for its intended use and that it was designed, manufactured, and sold in accordance with good design, engineering, and industry standards." (Compl. ¶ 78.) This language suggests a claim for breach of the implied warranty of merchantability. However, in Plaintiff's opposition brief, he argues breach of express warranty elements. (Pl. Mem. in Opp'n. 8-9.) Nonetheless, neither type of breach of warranty claim has been pleaded adequately and, therefore, Count IV must be dismissed.

Breach of Implied Warranty of Merchantability

An implied warranty of merchantability "is a guarantee by the seller that its goods are fit for the intended purpose for which they are used." See Morrison v. Hoffmann-La Roche, Inc., No. 14-cv-4476-DLI-RML, 2016 WL 5678546, at *10 (E.D.N.Y. Sept. 29, 2016) (citing Caronia v. Phillip Morris USA, Inc., 715 F.3d 417, 433 (2d Cir. 2013)). The analysis of such a

claim focuses on the expectation of the user when the product is used in a reasonably foreseeable manner. Id. Plaintiff may recover if he establishes that the product was not minimally safe for its expected purpose as designed. Id. In the present case, Plaintiff has not alleged or argued a factual basis for concluding that the product was not minimally safe for its expected purpose despite some disclosed risks.

### Breach of Express Warranty

To establish a breach of express warranty, a plaintiff must show "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). Plaintiff asserts in his opposition brief that Defendant's marketing of PCOx Mesh as "safe and efficient" constituted a warranty. (Pl. Mem. in Opp'n. 9.) The New York standard for breach of express warranty requires a showing of a specific affirmation of fact or promise that is false and misleading. See DiBartolo, 914 F. Supp. 2d at 626. In the present case, Plaintiff does not identify a specific warranty made by Defendant that he relied on. His characterization of Defendant's marketing material as generally implying that PCOx Mesh was "safe and effective" does not identify any specific actionable conduct or statement on behalf of Defendant. (Compl. ¶ 97); see Viania v. Zimmer, Inc., No. 2:17-cv-1641(ADS) (AYS), 2017 WL 5714725, at *5 (E.D.N.Y. Nov. 27, 2017) (dismissing an express warranty claim where plaintiff did not allege where or to whom the purported "safe and effective" warranty was

directed). Plaintiff's claim for breach of express warranty thus fails to state a claim upon which relief may be granted.[13]

Fraudulent and Negligent Misrepresentation

The fraudulent and negligent representation claims brought in Counts VI and VII of Plaintiff's Complaint trigger the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and must be plead with particularity.[14] To satisfy the particularity requirement of Rule 9(b), the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal quotation marks and citations omitted).

Plaintiff's claim for fraudulent misrepresentation alleges that Defendant made misrepresentations of material fact from 2011 to the present. (Compl. ¶ 93.) Plaintiff alleges that the incorporated PCOx Mesh brochure, study, and Defendant's website[15] contain "false and misleading representations" that failed to disclose known risks of PCOx Mesh. (Id. at ¶¶ 95-96.) Plaintiff alleges that Defendant intentionally, willfully, knowingly, and fraudulently made these misrepresentations. (Id. at ¶ 97.) Absent from these allegations is any factual basis for

---

[13] As argued by Defendant, Plaintiff may not amend his pleadings in an opposition brief. See Gelber v. Stryker Corp., 788 F. Supp. 2d 145, 166 (S.D.N.Y. 2011) (dismissing plaintiff's express warranty claim where the initial pleading only stated that the product was not safe and effective for its intended purpose because plaintiff failed to identify actionable conduct of the defendants).

[14] Federal Rule of Civil Procedure 9(b) is applicable to fraudulent and negligent misrepresentation claims. See Tyman v. Pfizer, Inc., No. 16-CV-06941, 2017 U.S. Dist. LEXIS 212879, at *20-21 (S.D.N.Y. Dec. 17, 2017).

[15] As previously indicated above, only the brochure and study were available to the Court from the links provided in Plaintiff's Complaint.

Plaintiff's conclusion that the representations made by the Defendant were false or misleading. In fact, the advertising material incorporated into the Complaint appears to have disclosed the risks of the conditions that Plaintiff has allegedly suffered. Plaintiff has thus failed to identify false statements and demonstrate why the statements were fraudulent.

For substantially the same reasons, Plaintiff's claim in Count VII for negligent misrepresentation also fails under the Rule 9(b) standard. Negligent misrepresentation can be established by showing that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011). Plaintiff alleges generally that Defendant had a "duty to represent truthfully and accurately…the results of Defendant' hernia mesh products testing" and breached that duty when it marketed its PCOx Mesh as safe and effective without adequately disclosing its risks. (Compl. ¶¶ 121-123.) Again, Plaintiff does not provide any factual basis for his conclusion that Defendant's risk disclosures for PCOx Mesh were misrepresentations or inaccurate.

Consumer Fraud under New York General Business Law Sections 349 and 350

In Count IX, Plaintiff asserts that Defendant used unconscionable commercial practices in engaging in allegedly fraudulent conduct and knowingly concealing, suppressing, and omitting material facts in violation of New York General Business Law Sections 349 and

350.  (Compl. ¶¶ 134, 137.)  Plaintiff asserts that the alleged deception consisted of selling Defendant's product to the public without disclosing known risks.  (Id. at ¶¶ 136, 139.)

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. § 349(a) (2014).  Section 350 prohibits false advertising in the conduct of any business, trade, or commerce or the furnishing of any services in the state.  Id. at § 350.  Under either section the plaintiff must allege that the defendant has engaged in "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  Orlander v. Staples, Inc., 802 F.3d 282, 300 (2d Cir. 2015) (citing Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012)).

Plaintiff alleges that "Defendant engaged in consumer-oriented, commercial conduct by selling and advertising the subject product" and "Defendant misrepresented and omitted material information regarding the subject product by failing to disclose known risks."  (Id. at ¶¶ 135-136.)  Plaintiff claims that these omissions and concealments were the direct and proximate result of his physical injuries.  (Id. at ¶ 141.)  While deceptive acts need not rise to the level of common law fraud under Section 349, a plaintiff still must show that the alleged deceptive acts would mislead a reasonable consumer acting reasonably under the circumstances.  See Stutman v. Chemical Bank, 95 N.Y.2d 24, 28-29 (2000).  Based on the marketing material cited in the Complaint, the Court is unable to conclude that this element is met.  Additionally, to establish consumer-oriented conduct, Plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large."  Oswego Laborers' Local 214 Pension Fund v. Marine

Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995).  Plaintiff has not pleaded sufficient facts to establish that Defendant's conduct was consumer-oriented.

Count IX will therefore be dismissed.

Unjust Enrichment

Count VIII of the Complaint asserts a claim for unjust enrichment, which requires a showing (1) that the defendant was enriched; that the enrichment was at the plaintiff's expense; and (3) that equity and good conscience require restitution.  See Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006).  Plaintiff's claim for unjust enrichment fails because Plaintiff has not plausibly pleaded facts demonstrating that Defendant's product was defective or that the sale was induced through a misrepresentation, and thus there is no equitable basis for a requiring restitution.

Punitive Damages

Since all of Plaintiff's substantive claims are deficient, his claim in Count V for punitive damages must also be dismissed.  See Rocanova v. Equitable Life Assur. Soc'y, 83 N.Y.2d 603, 616 (1994).

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is granted in its entirety.  Plaintiff's request for leave to amend his Complaint to correct certain typographical errors is denied as futile. [16]  Plaintiff's Complaint fails to sufficiently plead the factual support required to establish the claims asserted in each Count.

---

[16]  Under Federal Rule of Civil Procedure 15(a) a party should be granted leave to amend its pleadings freely.  However, leave to amend may properly be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment."  Foman v. Davis, 371

In his opposition brief, Plaintiff has generally requested further leave to amend his Complaint in the event that any of his claims is found insufficient. Plaintiff is hereby granted permission to move, by **April 19, 2019**, for leave to amend the Complaint. Any such motion must comply with the applicable federal, local, and chambers rules, and must be accompanied by a blacklined version of the proposed amended complaint, identifying all changes from the original Complaint. To the extent the proposed Amended Complaint refers to or relies upon material published on the internet, it must include an accurate printout of the material as an exhibit. If no timely motion is filed, the Complaint will be dismissed with prejudice and judgment will be entered without further advance notice.

This memorandum order resolves Docket Entry No. 8.

SO ORDERED.

Dated: New York, New York
March 29, 2019

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

---

U.S. 178, 182 (1962). The specified changes, standing alone, would be insufficient to address the pleading deficiencies discussed in this Memorandum Order.